In re The LESLIE FAY COMPANIES,
INC., et al., Debtors.

Jacob V. FALBAUM, Anthony Gill, Lee L.
Kishbaugh, Emile Lewkowiez, Elizabeth
Michaud and Raymond J. Terwilliger,
Appellants,

v.

The LESLIE FAY COMPANIES,
INC., et al., Appellees.

No. 97 CIV. 8354(JSR).

United States District Court,
S.D. New York.

July 17, 1998.

Wisehart & Koch, by Arthur M. Wisehart and Heather R. Boshak, New York City, for claimants.

McDermott, Will & Emery by Joel E.Cohen and Barbara Funt, New York City, for debtors.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On April 5, 1993, Leslie Fay and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Each of the debtors thereafter operated its business or managed its properties as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. By separate proofs of claim filed in 1993 and 1994, the appellants—former Leslie Fay employees Jacob V. Falbaum, Anthony Gill, Lee L. Kishbaugh, Emile Lewkowiez, Elizabeth Michaud, and Raymond J. Terwilliger—sought $80 million in damages from the debtors, alleging that the debtors unlawfully terminated them on the basis of age, gender, and/or disability, unlawfully failed to rehire them for similar reasons, and unlawfully retaliated against them for the exercise of their rights.

After the Honorable Miriam Goldman Cedarbaum, United States District Judge, denied appellants' motions to withdraw their claims from the Bankruptcy Court, the Honorable Tina L. Brozman, United States Bankruptcy Judge, heard and decided the claims adversely to the appellants. In blunderbuss fashion, appellants now challenge almost every aspect of those decisions. The Court finds, however, that except in one minor respect relating to one aspect of the award of fees, their appeals are without merit and must be denied.

### The Bankruptcy Court's Jurisdiction

■ At the outset, appellants assert that the Bankruptcy Court lacked jurisdiction to adjudicate their claims. To the extent that these assertions constitute appeals from Judge Cedarbaum's orders, in the exercise of her original jurisdiction, denying appellants' various motions to withdraw the reference from the bankruptcy court, such appeals are beyond this Court's jurisdiction and must be addressed, if at all, to the Court of Appeals. *See* 28 U.S.C. § 158(a); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993); *In re Sonnax Indus.*, 907 F.2d 1280, 1282–83 (2d Cir.1990); *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1385 (2d Cir. 1990); *In re Moens*, 800 F.2d 173, 176 (7th Cir.1986); *cf. In re Manoa Finance Co., Inc.*, 781 F.2d 1370, 1372 (9th Cir.1986). *But see In re Chateaugay Corp.*, 109 B.R. 613, 615 n. 1, 619 (S.D.N.Y.1990) (asserting—incorrectly in this Court's view—that the decision of a different district judge that denied a motion for withdrawal of reference merged into the final order of the bankruptcy court and was reviewable under § 158(a)), *appeal dismissed on other grounds*, 924 F.2d 480 (2d Cir.1991) (per curiam).

■ Appellants argue, however, that even if this Court cannot review Judge Cedarbaum's rulings, it can exercise appellate jurisdiction to review Judge Brozman's separate denial of certain of these same jurisdictional objections, which appellants separately raised in the Bankruptcy Court. This is not persuasive. Appellants, having chosen to

raise all these jurisdictional objections (and more) before the District Court in the exercise of its original jurisdiction do not get a second chance thereafter to relitigate the same issues before the District Court under the guise of appellate review of Judge Brozman. Moreover, even assuming *arguendo* that Judge Brozman's jurisdictional determinations were properly before this Court, the Court concludes that Judge Brozman's jurisdictional determinations were correct and that the Bankruptcy Court did not lack jurisdiction to try Leslie Fay's objections to the proofs of claim.

■ In particular, Judge Brozman was clearly correct in holding that appellants' proofs of claim fall squarely within the statutory definition of "core proceedings." 28 U.S.C. § 157(b)(2)(B); *see In re S.G. Phillips Constructors, Inc.,* 45 F.3d 702, 705 (2d Cir. 1995); *In re Best Prods. Co., Inc.,* 68 F.3d 26, 32 (2d Cir.1995). As for appellants' argument that their claims are exempted from the Bankruptcy Court's jurisdiction by §§ 157(b)(2)(B) and (b)(5) because they involve non-core "personal injury tort ... claims," this was never raised before Judge Brozman (but only before Judge Cedarbaum) and therefore there is nothing for this Court to review. *See* August 18, 1997 Decision After Trial on Employees' Discrimination Claims at 47–48. Finally, as to appellants' jurisdictionally related assertion that they were deprived of a jury trial, it is well settled that a creditor who voluntarily participates in the equitable reordering of a debtor's estate by filing a proof of claim has no jury trial rights with respect to proceedings that involve the allowance or disallowance of those claims. *See, e.g., Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58, 109 S.Ct. 2782, 106

L.Ed.2d 26 (1989); *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam).[1]

### The Denial of the Claims

■ Properly applying the relevant principles of the law of discrimination and retaliation, the Bankruptcy Court denied appellants' claims, chiefly on the basis of credibility findings adverse to appellants. Nothing in appellants' papers remotely supports a conclusion that any of these or the Bankruptcy Court's other factual findings were clearly erroneous. Appellants contend, however, that the Bankruptcy Court erred in bifurcating the trial so that it first heard (and decided adversely to appellants) those claims that debtors claimed were barred by validly obtained releases, before deciding appellants' other claims. On the contrary, such bifurcation, which rested within the sound discretion of the Bankruptcy Court, appropriately narrowed the issues and promoted judicial economy, and thus was altogether proper. *Cf. Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277, 283 (2d Cir.1990); *Bormann v. AT & T Comms., Inc.,* 875 F.2d 399, 401 (2d Cir. 1989).[2]

### The Award of Fees and Expenses

Finally, appellants argue that the Bankruptcy Court abused its discretion in approving the award of $9,592,396 in fees and $1,239,845.47 in expenses to debtors' counsel Weil, Gotshal & Manges ("Weil Gotshal"), $311,236.25 in fees and $19,789.63 in expenses to debtors' special labor counsel McDermott, Will & Emery ("McDermott"), and $2,426,226.10 in fees and $204,454.62 in expenses to debtors' special corporate coun-

---

1. In fact, the case on which appellants primarily rely in this area, *Germain v. Connecticut National Bank,* 988 F.2d 1323 (2d Cir.1993), specifically held that "the *Katchen, Granfinanciera,* and *Langenkamp* line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue that bears directly on the allowance of that claim—and does so not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity. It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for

the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor." *Id.* at 1329–30.

2. Although appellants also assert that the Bankruptcy Court erred in excluding various pieces of evidence, they do not explain why the exclusion of this evidence was erroneous but rather merely assert that the excluded evidence would have been probative. The Court concludes that appellants have made no showing that the Bankruptcy Court abused its discretion in this regard.

sel Parker Chapin Platteau & Klimpl ("Parker Chapin"), because all three firms concurrently represented individual Leslie Fay officers and directors and had impermissible conflicts of interest. *See* 11 U.S.C. § 328(c) (giving the Bankruptcy Court the ability to deny compensation to a professional who "at any time during such professional person's employment ... is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed"); *id.* § 101(14) (defining "disinterested person" as, *inter alia,* a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders ... for any ... reason"). Additionally, according to appellants, the firms did not disclose these conflicts to the Bankruptcy Court as required under Bankruptcy Rule 2014(a).[3]

■ Appellants bear the burden of proof in establishing a conflict of interest, *see In re Kliegl Bros. Universal Electric Stage Lighting Co., Inc.,* 189 B.R. 874, 880 (Bankr. E.D.N.Y.1995), and they have not met this burden with respect to any of the three law firms.[4] Regarding Weil Gotshal, appellants attack as improper that firm's submission of letters on behalf of the Leslie Fay Board of Directors Audit Committee to the District Court in a securities litigation related to the action at hand. But that representation was permitted by the Bankruptcy Court's decision on a disqualification motion involving Weil Gotshal that has not been appealed and of which this Court sees no reason to disapprove. *See In re The Leslie Fay Companies, Inc.,* 175 B.R. 525 (Bankr.S.D.N.Y.1994).

Nor did Weil Gotshal act improperly in participating in the response to appellants' proofs of claim. Although certain of the debtors' objections were filed after December 15, 1994, the date on which the Bankruptcy Court disqualified Weil Gotshal from undertaking further new matters in this litigation, *see id.,* the objections were obviously begun prior to that date and the Bankruptcy Court was aware of and approved of Weil Gotshal's prior role. With respect to appellants' allegations that Weil Gotshal improperly brought about or influenced a large severance payment made to Laura Pomerantz, former member of the Leslie Fay management, there is no showing that Weil Gotshal represented Ms. Pomerantz in any matter relating to her employment agreement or the relevant release. Finally, although appellants argue that Weil Gotshal failed to pursue claims for pre-petition stock transactions conducted by certain members of Leslie Fay's management, there was no proof that management engaged in any wrongdoing and thus no need to pursue any claims. *See Leslie Fay,* 207 B.R. at 776 n. 19.

Regarding McDermott, which represented various officers and directors of Leslie Fay in discrimination suits brought by appellants in the District Court, appellants provide no basis for believing that this representation involved McDermott in representing an interest adverse to the estate or impacted on the firm's disinterestedness as special labor counsel for Leslie Fay. The Bankruptcy Court was aware of McDermott's representation of the individuals when it approved McDermott's retention as special labor counsel. In that connection, McDermott submitted an affidavit stating that the firm had apprised both Leslie Fay and the individuals

---

**3.** Although appellants also appeal the Bankruptcy Court's order denying them compensation for professional services and expenses, they make nary an argument on the topic in their opening brief, and have therefore waived the issue entirely. *See Knipe v. Skinner,* 999 F.2d 708, 710–11 (2d Cir.1993); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648, 653 n. 3 (2d Cir.1979); *see also* Bankruptcy Rule 8010(a)(1)(E). Moreover, the Bankruptcy Court's denial of these fees pursuant to 11 U.S.C. § 503(b)—on the grounds that appellants did not make "a substantial contribution" and that the fees and expenses were not "actual or necessary" because the firm had never billed or

been paid by its clients—was not clearly erroneous. *See generally In re Hooker Investments, Inc.,* 188 B.R. 117, 120 (S.D.N.Y.1995), *aff'd,* 104 F.3d 349 (2d Cir.1996).

**4.** Appellees further argue that appellants are collaterally estopped from relitigating those aspects of the fee-related issues covered by various orders that have not been appealed or that have already been affirmed on appeal. However, the Court need not reach this issue because it finds appellants' relevant underlying contentions to be without merit.

of the possible pitfalls involved in representing all of them, that they had all consented, and that no conflicts of interest had arisen or were likely to arise since all of those parties took an identical position with respect to appellants' discrimination claims and did not have defenses that were inconsistent with each others' interests. The Bankruptcy Court approved McDermott's retention after finding that the representation created no "actual conflict of interest" and that appellants had "not really identified any facts which suggest ... anything stronger than the theoretical." Tr. of 10/3/95 Hearing at 25–28. Appellants now advance only speculation, innuendo, and conclusory assertions in support of their argument that McDermott's actions were conflicted and, instead, tainted the Bankruptcy Court's extensive proceedings. See, e.g., Appellants' Reply Brief at 42. This is patently insufficient.

However, one minor aspect of the fee award to McDermott must be remanded to the Bankruptcy Court for further consideration. See Fed. R. Bankr. 8013. Although McDermott has admitted that approximately $11,000 of the fees that it was awarded in connection with its representation of the debtors actually related to its representation of the individuals in the discrimination suit, the Bankruptcy Court never ruled on this matter because it concluded that it had already been divested of jurisdiction by appellants' appeal to this Court. Accordingly, this Court will remand this proceeding to the Bankruptcy Court for the limited purpose of having it examine McDermott's billing records, determine which portions relate to matters other than McDermott's representation of the debtors, and set McDermott's final fee award accordingly.

Regarding Parker Chapin, even if the Court overlooks the fact that several of appellants' objections relating to Parker Chapin's fees were not raised before the Bankruptcy Court, the Court concludes that appellants have not in any event demonstrated any impermissible conflicts of interest with respect to that firm. For instance, although appellants characterize as improper Parker Chapin's representation of individual officers and directors in connection with negotiation of certain releases, the releases were negotiated on the debtors' behalf by Wachtell, Lipton Rosen & Katz, counsel for the creditors' committee, not by Parker Chapin. Further, although Parker Chapin was involved in a related state court derivative action, any potential impropriety has been avoided by having the creditors' and equity committees take control over any potential claims by debtors against their former officers and directors and by the creation of the Derivative Action Board, which has independent responsibility for evaluating and prosecuting (if prudent to do so) the derivative action. Appellants' other specific complaints relating to Parker Chapin are in the same vein and are similarly meritless.

### Conclusion

The Court has carefully considered each of appellants' numerous arguments, including those not discussed above, and found them all to be without merit, except for the one minor aspect relating to McDermott's fees. Accordingly, that limited issue is hereby remanded to the Bankruptcy Court, and all of the other orders appealed from are hereby affirmed in all respects.

SO ORDERED.