Toby YERRY, Plaintiff,

v.

PIZZA HUT OF SOUTHEAST KANSAS; Charles White, Defendants.

No. 00–CV–1131.

United States District Court, N.D. New York.

Feb. 6, 2002.

Deily, Dautel & Mooney, LLP, Albany, NY (Lisa F. Joslin, Susan S. Dautel, of counsel), for plaintiff.

Hinman, Howard & Kattell, LLP, Binghamton, NY (James S. Gleason, of counsel), Attorneys for Defendant Pizza Hut.

Aswad & Ingraham, Binghamton, NY (Thomas A. Saitta, of Counsel), Attorneys for Defendant White.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I. INTRODUCTION

■ Plaintiff Toby Yerry ("Yerry" or "plaintiff") commenced this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000–e et seq., New York Executive Law §§ 290 et seq., and state common law. The federal cause of action is for sexual harassment and retaliation against plaintiff's former employer, defendant Pizza Hut of Southeast Kansas, Inc. ("Pizza Hut").[1] Plaintiff also sues defendant Charles White ("White" or "defendant") (collectively, "defendants"), a shift manager for Pizza Hut in state law causes of action for assault and battery, false imprisonment, intentional infliction of emotional distress, and under the Executive Law for sexual harassment and discrimination.

Defendants have moved for summary judgment dismissing plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Oral argument was heard on December 21, 2001, in Utica, New York. Decision was reserved.

---

1. Plaintiff sues Pizza Hut for sexual harassment and retaliation under both Title VII and New York Executive Law. Because New York courts require the same standard of proof on claims brought under the Executive Law as those brought under Title VII, the foregoing analysis applies to plaintiff's Title VII and state claims in tandem. *See Badlam v. Reynolds Metals Co.,* 46 F.Supp.2d 187, 193 n. 3 (N.D.N.Y.1999). Plaintiff also sues Pizza Hut pursuant to New York State law under a theory of "respondeat superior" for the acts of White. Additionally, in plaintiff's memorandum of law in opposition to the defendants' motions for summary judgment, he withdraws his ninth cause of action for civil conspiracy.

## II. *FACTS*

The following are the facts in the light most favorable to the plaintiff.

The plaintiff, a 20 year old, began his employment with Pizza Hut in February 1999 at the restaurant in Gloversville, New York. He was 18 years old at the time and he worked primarily as a delivery driver. White began working for the Gloversville Pizza Hut in April 1999. He was hired as a night shift manager.

On September 13, 1999, Yerry worked an evening shift that began at 4:00 p.m. and ended when the restaurant closed at 11:00 p.m. White was the plaintiff's shift manager that evening. The plaintiff and defendant were assigned to close the restaurant. Plaintiff returned from his last delivery at about 10:20 p.m. and was questioned by the defendant as to a missing delivery ticket. The plaintiff found the ticket in his car and gave it to the defendant along with the money for that delivery.

White accused Yerry of trying to steal the money, and stated that he would call the police and plaintiff would be fired. The defendant insisted he should be punished and ordered the plaintiff to recite a prayer as dictated by him. White then told the plaintiff that he would either spank plaintiff or call the police. Plaintiff refused to allow the defendant to spank him. He then completed his closing duties and prepared to leave when the defendant again insisted that he be punished in some way. White told the plaintiff that he would let him go into the restroom and spank himself with his own belt. Yerry asserts that he was afraid of the defendant and afraid of losing his job, so he followed him into the men's restroom. While in the restroom, White locked the door and plaintiff lowered his pants, revealing a portion of his right buttock and hip, and spanked himself. The defendant watched while he did this but did not touch him. Thereaf-ter, plaintiff immediately left the restaurant.

The following morning, September 14, 1999, Yerry returned to the restaurant with his mother and his girlfriend to report the incident to the restaurant manager, Ryan Pacillo ("Pacillo"). Pacillo questioned White about the plaintiff's allegations which the defendant denied. White was suspended from work that very day and never returned. Plaintiff continued to work for Pizza Hut, but claims that he was treated differently by his co-workers. His co-workers rolled their eyes at him, glared, and often gave unfriendly looks. Plaintiff also asserts that Pacillo was more critical of his work and not as friendly to him as he had been before the White incident. Shortly after December 25, 1999, plaintiff found other employment and resigned from Pizza Hut.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir.1999). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson,* 180 F.3d at 436; *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Courts have urged care in reviewing discrimination claims, noting that "[b]ecause direct evidence of ... discriminatory intent will rarely be found, 'affidavits and depositions must carefully be scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) (quoting *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994)). Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348; *see also Schwapp,* 118 F.3d at 110 ("[e]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."). To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *See Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Conversely, "summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." *Richardson,* 180 F.3d at 438.

### B. *Quid Pro Quo Harassment / Hostile Work Environment*

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Accordingly, "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

The Second Circuit has recently clarified that there is no need to distinguish between "hostile work environment" sexual harassment and "quid pro quo" harassment. *See Gregory v. Daly,* 243 F.3d 687, 698 (2d Cir.2001) (interpreting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). In *Gregory,* the court observed that the Supreme Court "has indicated that these labels, to the extent that they are useful at all, are so merely as descriptions of varying workplace conditions that violate Title VII's basic prohibition on sex discrimination in terms or conditions of employment." *Id.* (citing *Ellerth,* 524 U.S. at 751–52, 118 S.Ct. 2257; *Oncale,* 523 U.S. at 78–81, 118 S.Ct. 998). After *Gregory,* it is clear that allegations of "quid pro quo" sexual harassment do not state an independent claim, but are instead merely one *type* of factual allegation to support a cause of action under Title VII. *See id.* Accordingly, Yerry's claims of quid pro quo harassment will not be addressed separately, but will be considered as part of his claims that he was subjected to (1) a hostile work environment by White and Pizza Hut, and (2) retaliation by Pizza Hut for complaining about White's conduct.

## C. *Hostile Work Environment*

■ In order to establish a *prima facie* case of hostile work environment discrimination, a plaintiff must sufficiently plead and prove: (1) that he is a member of a protected group; (2) that he was the subject of unwelcome advances; (3) that the harassment was based upon his sex; and (4) that the harassment affected a term, condition or privilege of his employment. *See Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1042 (2d Cir.1993). The fourth element is established by showing that his workplace "was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment." *See id.* Further, a plaintiff must also demonstrate that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp,* 118 F.3d at 110.

■ It will be assumed for the purposes of this motion only that plaintiff's allegations would satisfy the first three elements of this test.[2] The analysis then turns to the fourth element. Whether the alleged conduct affected a term, condition or privilege of his employment. Conduct "sufficiently severe or pervasive" to create a hostile environment is that which "a reasonable person would find hostile or abusive," and which the victim subjectively perceived to be abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

■ A work environment is "objectively hostile" where a reasonable person who is the target of discrimination would find the working conditions so severe or pervasive as to alter the terms and conditions of employment for the worse. *See Richardson,* 180 F.3d at 436. "Determin-

ing whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000). The existing circumstances should be considered "cumulatively." *Schwapp,* 118 F.3d at 111. Factors relevant to determining whether plaintiff's working conditions meet the standard may include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted. *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

■ Generally, an isolated episode of harassment will not suffice to demonstrate a hostile work environment unless it was "extraordinarily severe." *Cruz,* 202 F.3d at 570. Otherwise, a plaintiff may show that a "series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Id.* However, " '[t]here is neither a threshold "magic number" of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.' " *Richardson,* 180 F.3d at 439 (quotation omitted); *see also Harris,* 510 U.S. at 22, 114 S.Ct. 367 (hostile environment is not a "mathematically precise test"). Thus, for example, in *Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir.2000), the Second Circuit reversed the District Court's grant of summary judgment for the defendant in a hostile work environment claim. The lower court's dismissal was apparently based on the sole fact that the plaintiff had

---

**2.** Although there are no specific allegations that demonstrate Yerry was subjected to the spanking because of his sex, the absence of evidence that female employees were similarly treated provides an adequate basis to assume the sufficiency of plaintiff's claims.

alleged "a single incident of verbal harassment." In reversing, the Second Circuit explained that the lower court had failed to consider the totality of the circumstances, including the fact that the verbal offense was a long, obscene tirade witnessed by plaintiff's co-workers.

In the instant case, there was only one incident that the plaintiff complained of. However, the incident of September 13, 1999, was a severe and humiliating physical incident, not a mere offensive utterance. Drawing all inferences in favor of plaintiff, it is reasonable to conclude that an eighteen year old boy would find being forced by his supervisor to say a prayer and spank himself with his own belt in a locked restroom while the supervisor watched, sufficiently severe as to alter the terms and conditions of his employment. In viewing the totality of the circumstances, it is held that a reasonable jury could find that the incident with defendant White was severe enough to constitute a hostile work environment.

### D. Employer Liability

 The plaintiff must next establish a basis for imputing White's conduct to Pizza Hut. An employer will be presumed responsible where the perpetrator of the harassment was the victim's supervisor. See, e.g., Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). However, Burlington also provides employers with an affirmative defense in cases where it took no tangible employment action against the plaintiff employee. Id. at 765, 118 S.Ct. 2257. Under this defense the employer will be entitled to prevail where the perpetrator was the victim's supervisor if (1) there was no tangible employment action against a plaintiff as a result of the harassment; and (2) the employer exercised reasonable care to prevent and correct the sexually harassing action or behavior; and (a) the plaintiff did not avail himself of

these preventative or corrective opportunities; or (b) the employee complained and the employer responded by acting soon thereafter to appropriately correct the action or behavior complained of. Van Alstyne v. Ackerly Group, 2001 WL 540379, 8 Fed.Appx. 147, 2001 U.S.App. LEXIS 10588, 10 (2d Cir. May 21, 2001).

The only question concerning the applicability of the defense in this case is whether Pizza Hut exercised reasonable care to prevent and correct White's behavior. Although plaintiff argues that the hostile and unfriendly treatment of him by his co-workers and Pacillo constituted a tangible employment action, such allegations are far too tenuous and ambiguous to constitute a "tangible" employment action. Plaintiff also contends that his work hours were cut after his complaint; however, plaintiff's pay records show that his hours remained the same. Accordingly, it is held that plaintiff has failed to establish that he was subjected to such an action by Pizza Hut.

 Yerry argues that Pizza Hut failed to prevent White's conduct, and is therefore responsible for it. He asserts that while White was working for Pizza Hut, the company obtained information that White was arrested and charged with sexual abuse and endangering the welfare of minor boys. Plaintiff argues that Pizza Hut negligently retained the defendant by failing to act on the knowledge of the arrest. However, White denied those allegations. Pizza Hut had no duty to fire White on the basis of allegations of actions that occurred outside of work while there were no allegations of sexually harassing conduct in work. See Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 137 (2d Cir.2001) (stating that employers are not liable for torts committed outside of their premises). See also, Jackson v. Kimel, 992 F.2d 1318, 1323 (4th Cir.1993) (stating that an em-

ployer will not be held liable for an employee's alleged misbehavior outside of work, there must be a showing of an employee's proclivity to engage in sexually offensive conduct at work). Prior to the incident on September 13, 1999, there were no other incidents reported to Pizza Hut of White engaging in sexually offensive behavior while at work. Therefore, Pizza Hut could not have taken action against White. As a result, it is held that Pizza Hut did not fail in its duty to prevent White's conduct.

 Plaintiff's next argument is that Pizza Hut failed to respond appropriately to White's conduct. The assessment of the employer's response to the inappropriate conduct is frequently considered a jury question. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1180–81 (2d Cir.1996). Indeed, "[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir.1998); *accord, Richardson*, 180 F.3d at 441.

However, in this case, there is no question of fact concerning the reasonableness of Pizza Hut's response to submit to a jury. In response to the plaintiff's complaint, Pizza Hut immediately investigated his claim and suspended White. He never returned to work with Pizza Hut after he was suspended. Therefore, Yerry never had to work with White after the restroom incident. As a matter of law, the defendant Pizza Hut acted promptly and appropriately in response to the plaintiff's complaint.

### E. *Retaliation*

 In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the

plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998). To constitute "protected activity" for purposes of meeting the first element, the employee need only establish that he opposed an employment practice based on a "good faith, reasonable belief" that such employment practice was unlawful. *See id.* Where, as here, a plaintiff complains to his employer about unlawful sexual harassment, it is undisputed that plaintiff engaged in a protected activity.

With regard to plaintiff's claims that he was subjected to an adverse employment action, this claim fails for the same reason that his claims of a "tangible employment action" are rejected. Plaintiff argues that his isolation from the manager and co-workers establishes an adverse employment action; however, these allegations are far too speculative. Even drawing all inferences in favor of the plaintiff, there is simply no adequate basis in the record to conclude that plaintiff was subjected to any tangible adverse employment action. In fact, plaintiff continued to work for Pizza Hut until he found a better job. Accordingly, his retaliation claim must be dismissed.

### F. *Defendant White*

 It is well settled in New York that individual employees cannot be liable under Section 296(1) of the Executive Law, which provides that "it shall be an unlawful discriminatory practice for any employer ... to discriminate against such individual in compensation or in terms, conditions, or privileges of employment." N.Y. Exec. Law § 296(1)(a). *See Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). The Second Circuit has held, however, that individual employees can be lia-

ble as aiders and abettors under section 296(6) of that statute. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995).

 "It is generally accepted, however, that once an employer has been found to have not discriminated, there is no predicate for imposing liability on the supervisors under an aiding and abetting theory." *Falbaum v. Pomerantz*, 2001 WL 1019616, *4, 19 Fed.Appx. 10 (2d Cir. Sept. 6, 2001). *See also Tomka*, 66 F.3d at 1315 (noting that the inappropriate conduct must be able to be imputed to the employer before a supervisor can be liable). Since there has been no finding that Pizza Hut engaged in discriminatory behavior, White can not be held liable under section 296(6) of the Executive Law. Accordingly, plaintiff's New York Executive Law causes of action against White must be dismissed.

## IV. *CONCLUSION*

For the foregoing reasons, and viewing the facts in the light most favorable to the plaintiff, there is no basis to impute White's conduct to Pizza Hut. Further, no retaliatory action was taken against the plaintiff by Pizza Hut. Plaintiff's federal law (Title VII) cause of action against Pizza Hut and plaintiff's state law (Executive Law) cause of action against Pizza Hut and Charles White must be dismissed. Supplemental jurisdiction will not be retained over his remaining state law causes of action which will be dismissed without prejudice.

Accordingly, it is

ORDERED that

1. Plaintiff Toby Yerry's causes of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000-e *et seq.* and New York Executive Law §§ 290 *et seq.* against defendant Pizza Hut of Southeast Kansas are DISMISSED;

2. Plaintiff Toby Yerry's cause of action for civil conspiracy is DISMISSED;

3. Plaintiff Toby Yerry's cause of action pursuant to New York Executive Law §§ 290 *et seq.* against Defendant Charles White is DISMISSED; and

4. Plaintiff Toby Yerry's state law causes of action for assault and battery, false imprisonment, and intentional infliction of emotional distress are DISMISSED without prejudice.

The clerk is directed to enter judgment dismissing the complaint in its entirety in accordance with this decision.

IT IS SO ORDERED.